UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARVIN THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | 18 C 6527 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| TOM DART, Cook County Sheriff, COOK COUNTY, KIM M. ANDERSON, RN, MONICA ABNER, RICHARDSON Z. STAMATIA, MD, BHARATHI R. MARRI, MD, and WEXFORD HEALTH SOURCES INC., | ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Marvin Thomas brings this suit against Cook County Sheriff Thomas Dart, Cook County itself, several doctors and nurses who treated him while he was detained at Cook County Jail, and a firm he alleges to be the Jail's health services provider, asserting claims under 42 U.S.C. § 1983, the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq*., and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Doc. 45. Defendants move to dismiss the suit under Civil Rule 12(b)(6). Doc. 72. The motion is granted.

**Background**

A.  **Factual Background**

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Thomas's brief opposing dismissal, so long as those additional facts "are consistent with

1

the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to Thomas as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth the facts at the pleading stage, the court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

After being injured during a knife fight while serving in the U.S. Air Force, Thomas was diagnosed with post-traumatic stress disorder ("PTSD") and depression. Doc. 45 at ¶ 9. Years later, in June 2015, an automobile accident sent Thomas to the hospital, and he eventually was arrested and jailed for driving under the influence ("DUI"). *Id.* at ¶ 10. During the month he spent in Cook County Jail, jail staff denied Thomas medical treatment for pain related to the accident. *Id.* at ¶ 11. In addition, he was placed in a cell without proper heating and suffered an allergic reaction to the wool blankets that were his only source of warmth. *Ibid.* Thomas was released in July 2015 after the arresting officers failed to appear at a court hearing; after his release, he was treated in a hospital for pneumonia. *Id.* at ¶¶ 11-12.

In September 2015, Thomas was indicted and returned to the Jail. *Id.* at ¶ 13. In October 2015, he sustained an arm injury and had an allergic reaction to food while at the hospital. *Id.* at ¶ 14. His symptoms worsened when, on his return to the Jail, he was forced to sleep on the floor for five nights. *Ibid.*

In January 2016, a fellow detainee hit Thomas in the mouth, causing a wound that required five stitches to close. *Id.* at ¶ 15. Thomas had notified jail staff of threats of violence, but they took no action to protect him. *Ibid.* He dislocated his shoulder during the fight, but received no treatment for the injury. *Ibid.* The attack increased Thomas's anxiety, which had origins in the injuries he suffered while in the Air Force. *Id.* at ¶¶ 15-16.

The Jail responded to the fight by putting Thomas in "the hole." *Id*. at ¶ 17. Because his new cell had no running water, he was unable to keep the stiches in his mouth clean, and they became infected. *Ibid*. By the time his stitches were treated, the skin on his lip had begun to grow over them. *Ibid*. The nurse who removed the stitches commented that they had been inserted improperly. *Ibid*. The ordeal left Thomas with a "disfiguring lump" on his lip. *Ibid*.

After seven months in the Jail, Thomas pleaded guilty to the DUI charge and was released. *Id*. at ¶ 18. The date of his release was January 29, 2016. Doc. 80 at 4. He required surgery to repair the damage to his shoulder and lip. Doc. 45 at ¶ 18.

B.     **Procedural History**

In June 2017, Thomas filed a complaint in *Thomas v. Dart*, No. 17 C 4233 (N.D. Ill.) ("*Thomas I*"). Except for the date of his January 29, 2016 release from the Jail, the complaint in *Thomas I* alleged the above facts, verbatim to how he alleges them here. *Compare* Doc. 45 at ¶¶ 9-18, *with Thomas I*, ECF No. 1 at ¶¶ 11-20. The initial complaint in *Thomas I* asserted four counts: a § 1983 failure-to-protect claim against unknown jail personnel, *Thomas I*, ECF No. 1 at ¶¶ 23-24; a § 1983 claim against unknown medical personnel for inadequate medical treatment, *id*. at ¶¶ 25-26; a claim under the ADA and the Rehabilitation Act against Sheriff Dart for maintaining improper solitary confinement guidelines, *id*. at ¶¶ 27-28; and a § 1983 conditions-of-confinement claim against Cook County, *id*. at ¶¶ 29-30.

The *Thomas I* court dismissed the complaint on the ground that its claims were insufficiently related to one another. *Thomas I*, ECF No. 42 (Kendall, J.) (reported at 2018 WL 4016315 (N.D. Ill. Aug. 22, 2018)). The court characterized Thomas's claims as "arising from three separate sets of facts": (1) that he had an allergic reaction to woolen blankets during his first detention and later contracted pneumonia; (2) that he had an allergic reaction to hospital food and then was forced to sleep on a jail cell floor during his second detention; and (3) that jail

3

officers failed to protect him from a detainee who later attacked him, injuring his shoulder and lip, and that those injuries (as well as his PTSD) were exacerbated by the substandard medical treatment he was provided. 2018 WL 4016315, at *7. The court concluded that "[n]one of these sets of facts is related to another," and therefore dismissed the complaint without prejudice. *Id*. at *7-8. The court instructed Thomas that he had to decide which claims he wanted to pursue in that case; the other claims, the court explained, needed to proceed in a separate suit. *Id*. at *7.

Thomas filed his amended complaint in *Thomas I* in September 2018. *Thomas I*, ECF No. 44. The amended complaint realleged the § 1983 failure-to-protect claim against jail officials and the § 1983 conditions-of-confinement claim against the County, modified the ADA and Rehabilitation Act claim against Sheriff Dart to relate only to the failure to protect Thomas from other detainees, and did not include the § 1983 inadequate medical care claim against the unknown medical personnel. *Id*. at ¶¶ 19-24. In April 2019, the *Thomas I* court dismissed the Rehabilitation Act and § 1983 claims against Dart and allowed the ADA claim against Dart to proceed. *Thomas I*, ECF No. 76 (Kendall, J.) (reported at 2019 WL 1932589 (N.D. Ill. Apr. 30, 2019)). Discovery in *Thomas I* is ongoing.

The same day Thomas filed his amended complaint in *Thomas I*, he filed this suit. Doc. 1. The initial complaint asserted the § 1983 inadequate medical care claim against unknown medical personnel that Thomas did not include in his amended complaint in *Thomas I*, *id*. at ¶¶ 21-22 (Count I); an ADA and Rehabilitation Act claim against Sheriff Dart for "having guidelines that failed to adequately treat his preexisting conditions of PTSD and depression," *id*. at ¶¶ 23-24 (Count II); and the same § 1983 conditions-of-confinement claim against the County that he had asserted in both *Thomas I* complaints, *id*. at ¶¶ 25-26 (Count III).

4

This court allowed Thomas to proceed *in forma pauperis*, but on initial screening under 28 U.S.C. § 1915(e)(2)(B) ordered him to file a brief addressing whether his claims were barred on statute of limitations grounds. Doc. 8. Thomas responded that his claims arose out of *Thomas I* and were therefore not barred, Doc. 11, and this court, without running the issue to ground, allowed the case to proceed, reasoning that he had provided "a plausible reason why his claims are not time-barred," Doc. 12. Defendants then moved to dismiss under Rule 12(b)(6), arguing that the suit was duplicative of *Thomas I*. Doc. 27. The court granted the motion in part, dismissing Counts II and III as duplicative but allowing Count I to proceed. Doc. 38.

Thomas filed an amended complaint in this suit in January 2020. Doc. 45. The amended complaint differs in two ways from the initial complaint. First, instead of asserting Count I against "Unknown Medical Personnel," it names four individual doctors and nurses, as well as Wexford Health Sources, Inc. (collectively, "Medical Defendants"). *Id*. at ¶¶ 8, 22. Second, the amended complaint adds Count IV, which alleges medical malpractice against Medical Defendants. *Id*. at ¶¶ 27-28. Finally, the amended complaint reasserts Counts II and III verbatim against Sheriff Dart and Cook County, respectively, *id*. at ¶¶ 23-26, even though this court dismissed them as duplicative of counts brought in *Thomas I*.

**Discussion**

**I.    Count I: Section 1983 Inadequate Medical Care Claim Against Medical Defendants**

Count I alleges that Medical Defendants violated Thomas's constitutional rights by "fail[ing] to timely remove the stitches from [his] repaired lip causing his lip to become infected and disfigured," "fail[ing] to diagnose and treat his injured shoulder, which had been damaged during [the] altercation with a fellow inmate," and "fail[ing] to adequately treat his preexisting conditions of PTSD and depression." Doc. 45 at ¶ 22. Medical Defendants seek dismissal of Count I on statute of limitations grounds, arguing that they were named for the first time in the

5

January 2020 amended complaint in this suit, nearly four years after the last possible alleged instance of medical misconduct. Doc. 72 at 6-8. Medical Defendants are correct.

"The statute of limitations for § 1983 claims in Illinois is two years." *Gekas v. Vasiliades*, 814 F.3d 890, 894 (7th Cir. 2016); *see Regains v. City of Chicago*, 918 F.3d 529, 533 (7th Cir. 2019) ("[W]e look to the law of the state in which the personal injury occurred to determine the length of the [§ 1983] statute of limitations. Under Illinois law, a plaintiff must bring a personal injury action within two years after its accrual."). A § 1983 claim accrues at "the first moment at which [the plaintiff] had a complete and present cause of action." *Savory v. Cannon*, 947 F.3d 409, 414 (7th Cir. 2020) (en banc).

It is difficult to pinpoint exactly when the statute of limitations began to run against each Medical Defendant, as the amended complaint does not allege which defendant did what or when. But the court can say with certainty that all allegedly wrongful acts must have taken place on or before January 29, 2016, when Thomas was released the second time from the Jail. The latest accrual date, accordingly, is January 29, 2016. *See Wilson v. Wexford Health Sources, Inc.*, 932 F.3d 513, 517-18 (7th Cir. 2019) (explaining that a prisoner's inadequate medical care claim accrues no later than the last date on which both the plaintiff and the defendant were in the same facility).

With an accrual date in late January 2016, Thomas had until late January 2018 to assert his claim against Medical Defendants. Thomas argues that he did so when he brought *Thomas I* in June 2017. Doc. 80 at 4. And he argues further that this court resolved the limitations issue in his favor when it stated at the outset of this case, before any defendant was served and when no Medical Defendant was named, that Thomas had offered "a plausible reason why his claims are not time-barred." *Id*. at 2, 4; *see* Doc. 12.

6

The latter point is an obvious nonstarter. There is a substantial difference between this court's acknowledgment at the § 1915(e)(2)(B) stage that Thomas had offered an *arguable theory* why his claims were not time-barred, on the one hand, and the conclusion that those claims are indeed timely, on the other. The fact that a complaint survives § 1915(e)(2)(B) screening does not bar a defendant, once that defendant appears, from moving to dismiss a suit under Rule 12(b)(6). *See Okoro v. Bohman*, 164 F.3d 1059, 1062-63 (7th Cir. 1999) (explaining that a decision at the § 1915(e)(2)(B) stage has no preclusive effect with respect to the merits); *see also Denton v. Hernandez*, 504 U.S. 25, 34 (1992) (discussing the limited preclusive effect of screening stage dismissals of *in forma pauperis* suits). Moreover, the question whether the statute of limitations had run *as to these particular defendants* was not before the court at the § 1915(e)(2)(B) stage, for they had not yet been identified.

As to the former point, it is true that Thomas first asserted his § 1983 inadequate medical care claim against unnamed medical personnel in June 2017, within the two-year limitations period. But to comply with the statute of limitations, it is not enough that the *claim* be alleged within the prescribed period; rather, the claim must be alleged within that timeframe *against the defendant*. *See Athmer v. C.E.I. Equip. Co.*, 121 F.3d 294, 295 (7th Cir. 1997) ("If you sue a nonexistent entity, the filing of your suit does not deprive the real defendant whom you sue later of his defense that the statute of limitations has run. Otherwise a plaintiff could sue 'John Doe' the day after the accident and wait twenty years to find out the defendant's real name and amend the complaint accordingly."). Medical Defendants were not named until January 2020, outside the two-year limitations period, so the claim against them is timely only if the amended complaint relates back under Civil Rule 15(c)(1) to a pleading filed by late January 2018, within the limitations period. Rule 15(c)(1)(C) provides in pertinent part that when an amended

7

pleading names a party for the first time, the amendment relates back to an earlier pleading only if "the party to be brought in by amendment: (i) received [from the earlier pleading] such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known [from the earlier pleading] that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C).

Regardless whether the first requirement of Rule 15(c)(1)(C) is satisfied, the second is not. Seventh Circuit precedent holds that "[a] plaintiff's lack of knowledge about a defendant's identity is not a 'mistake' within the meaning of … Rule … 15(c)[(1)(C)(ii)] such that the plaintiff could amend his complaint outside the statute of limitations period upon learning the defendant's identity," and therefore that "once the statute of limitations expires, [the plaintiff] cannot amend his complaint to substitute a new party in the place of 'John Doe.'" *Gomez v. Randle*, 680 F.3d 859, 864 n.1 (7th Cir. 2012). The circuits to have addressed the John Doe issue since *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538 (2010), unanimously agree that Rule 15(c)(1)(C)(ii) is not satisfied where the plaintiff sues John Doe within the limitations period and names an actual defendant in an amended pleading after the limitations period expires. *See Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019); *Heglund v. Aitkin Cnty.*, 871 F.3d 572, 579-80 (8th Cir. 2017); *Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1202-03 (9th Cir. 2014); *Brown v. Cuyahoga Cnty.*, 517 F. App'x 431, 433-34 (6th Cir. 2013); *accord Vance v. Rumsfeld*, 701 F.3d 193, 211 (7th Cir. 2012) (en banc) (Wood, J., concurring in the judgment) ("[O]ur decision here spells the practical end to this case. This is certainly true with respect to the 'John Doe' defendants. The two-year statute of limitations that we apply in *Bivens* cases has long since run, and we do not permit relation back under … Rule … 15(c)(1)(C) where the plaintiff simply did not know whom to sue."); *see also* 3 *Moore's Federal Practice* § 15.19[3][d]

8

("Cases decided after *Krupski* have … held that when the plaintiff lacks knowledge of the identity of a defendant, and makes a deliberate choice to name a John Doe defendant instead of attempting to determine that person's identity, the plaintiff has not made a 'mistake,' and a later amendment substituting a named defendant does not relate back."). It necessarily follows that the January 2020 amended complaint in this case does not relate back to any pleading that Thomas filed in *Thomas I* within the limitations period.[*]

Thomas's other arguments fail to persuade. He argues that the relevant statute of limitations should be drawn not from Illinois's personal injury statute, 735 ILCS 5/13-202, but from its medical malpractice statute, 735 ILCS 5/13-212. Doc. 80 at 3. Binding circuit precedent forecloses that argument. *See Regains*, 918 F.3d at 533; *Gekas*, 814 F.3d at 894. In any event, the medical malpractice limitations period is two years as well. *See* 735 ILCS 5/13-212(a) ("[N]o action for damages for injury or death against any physician … or hospital duly licensed under the laws of this State, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, … of the existence of the injury or death for which damages are sought in the action … .").

Thomas next argues that because he "did not learn the extent of the disservice the medical defendants provided him until he received subpoenaed medical records in January of 2020," the statute of limitations began to run only at that later date. Doc. 80 at 3. The argument

---

[*] The undersigned judge acknowledges that he reached a contrary interpretation of Rule 15(c)(1)(C)(ii) in *McWilliams v. Cook County*, 2018 WL 3970145, at *4 (N.D. Ill. Aug. 20, 2018), and *Clair v. Cook County*, 2017 WL 1355879, at *3-4 (N.D. Ill. Apr. 13, 2017). Having considered the matter afresh, the undersigned judge concludes that his prior decisions did not account for the Seventh Circuit's clear holding in *Gomez* or for the other circuits' rationales as to why relation back under these circumstances finds no support from *Krupski*.

9

fails because a plaintiff's learning the "extent" of his injury or of the defendant's misconduct does not reset the statute of limitations, *see Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004) ("[A] cause of action accrues when the plaintiff knew or should have known *that it had sustained an injury*.") (emphasis added), and Thomas concedes that "he … became aware of his poor medical treatment … on January 19, 2016," Doc. 80 at 3, after he developed the "disfiguring lump" that required surgery, Doc. 45 at ¶¶ 17-18. In any event, it is difficult to take seriously Thomas's assertion that documents he received in January 2020 provided "the first indication [he] had that his treatment was substandard," Doc. 80 at 4, given that he has alleged exactly the same facts since his initial *Thomas I* complaint in June 2017, *Thomas I*, ECF No. 1 at ¶¶ 11-20.

Finally, Thomas argues that the governing relation-back standard should be drawn from Illinois law, not Rule 15(c). *Id*. at 6-7. But Illinois's relation-back standard have no possible bearing on his § 1983 claim, which arises under federal law. *See Rae v. Klusak*, 810 F. Supp. 983, 984 (N.D. Ill. 1993) (dismissing as "arrant nonsense" the argument that state law relation back principles govern in a federal question case); *cf. Fleece v. Volvo Constr. Equip. Kor., Ltd.*, 2012 WL 171329, at *2 (N.D. Ill. Jan. 20, 2012) (applying Illinois relation back principles in a diversity case).

In sum, because Thomas did not name Medical Defendants until January 2020, well after the limitations period expired, and because his amended complaint does not relate back to any pleading that Thomas filed within the limitations period, his inadequate medical care claim against them is time-barred.

**II.     Counts II and III: Claims against Cook County and Sheriff Dart**

As noted, this court dismissed Counts II and III of Thomas's initial complaint, reasoning that they are duplicative of claims asserted in *Thomas I*. Doc. 38; *see Serlin v. Arthur Andersen*

10

*& Co.*, 3 F.3d 221, 223 (7th Cir. 1993) ("As a general rule, a federal suit may be dismissed for reasons of wise judicial administration ... whenever it is duplicative of a parallel action already pending in another federal court. District courts are accorded a great deal of latitude and discretion in determining whether one action is duplicative of another, but generally, a suit is duplicative if the claims, parties, and available relief do not significantly differ between the two actions.") (alteration in original) (internal quotation marks and citations omitted). Yet Thomas reasserts those counts, verbatim, in his amended complaint. Those counts are once again dismissed.

### III. Count IV: Medical Malpractice Claim against Medical Defendants

Although Count IV seeks damages "under 42 U.S.C. § 1983" from Medical Defendants for "medical malpractice," Doc. 45 at ¶ 28, the court construes Count IV as a state law claim, as medical malpractice does not give rise to a § 1983 cause of action. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008) ("[T]he Eighth Amendment does not codify common law torts."). In any event, to the extent Count IV purports to state a claim under § 1983, it would be duplicative of Count I. Doc. 45 at ¶ 22 (Count I, seeking relief under § 1983 from Medical Defendants for their alleged constitutional violations stemming from their treatment of Thomas's injuries).

Because the parties are not diverse, there is no independent basis for federal jurisdiction over Thomas's medical malpractice claim. And with the federal law claims dismissed, there is no reason for the court to exercise supplemental jurisdiction over that state law claim. *See* 28 U.S.C. § 1367(c)(3) (authorizing a district court to "decline to exercise supplemental jurisdiction over a claim" after it has "dismissed all claims over which it has original jurisdiction"); *Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 607 (7th Cir. 2008) ("When all

federal claims have been dismissed prior to trial, the principle of comity encourages federal courts to relinquish supplemental jurisdiction pursuant to § 1367(c)(3)."). The court therefore relinquishes its jurisdiction over Count IV without expressing any view of its merits.

## Conclusion

Defendants' motion to dismiss is granted. (Although Wexford and one individual medical provider were not served and have not appeared, the arguments advanced in the motion for dismissal apply with equal force to them, so they are given the benefit of the court's ruling.) Count I is dismissed with prejudice, Counts II and III are dismissed without prejudice to Thomas pursuing them in *Thomas I*, and Count IV is dismissed without prejudice to Thomas pursuing it in state court, subject of course to any applicable defenses. The court will not give Thomas an opportunity to amend because, given the grounds for dismissal, any amendment would be futile. *See Right Field Rooftops, LLC v. Chi. Cubs Baseball Club, LLC*, 870 F.3d 682, 693 (7th Cir. 2017) ("District courts … have broad discretion to deny leave to amend where … the amendment would be futile.") (internal quotation marks omitted).

December 28, 2020                            _____
                                                          United States District Judge